United States District Court

District of South Dakota

Southern Division

FILED
DEC 1 2006

CLERK

0-0-0-0-0-0-0-0-0-0-0-0-0-0-0-0-0-0-0-0-0

CIV06-4265

Jennifer L Joffer,

    Plaintiff,

Vs.

Premier Bankcard Inc.
Human Resources
Scott Doetzel
Tom Schmidt,

    Defendants.

0-0-0-0-0-0-0-0-0-0-0-0-0-0-0-0-0-0-0-0-0

    Plaintiff, Jennifer L. Joffer ("Joffer") for her complaint against Premier Bankcard Inc., Human Resources, Scott Doetzel and Tom Schmidt states:

### Jurisdiction

1. Jurisdiction is conferred upon this court pursuant to the Americans with Disabilities Act of 1990 (as amended) ("ADA"), 42 U.S.C. 12101.

### Venue

2. Venue is proper in the United States District Court for the Southern District of South Dakota because all of the unlawful employment practices alleged were committed Within this jurisdiction.

### Parties

3. Plaintiff, Jennifer L. Joffer resides at 417 W. Mary St., Worthing, South Dakota, 57077.

4. Joffer is a citizen of the United States.

5. Defendant Premier Bankcard is a Sioux Falls Corporation with it's principal place of business at 900 W Delaware, Sioux Falls, South Dakota, 57105. Premier Bankcard is in the business of issuing credit cards to sub-prime candidates. Human Resources oversees that the policies in the employee handbook are followed. Scott Doetzel was Joffer's direct supervisor and is a Credit Managing Officer in the Credit Department. Tom Schmidt is Scott Doetzel's direct supervisor and is a Directing Officer in the Credit Department.

6. Defendant Premier Bankcard is an employer within the meaning of the Americans with Disabilities Act 42 U.S.C. Sec. 12101.

7. Joffer is an eligible employee within the meaning of the Americans with Disabilities Act 42 U.S.C. Sec 12101.

## Administrative Procedure

8. Within 180 days of the occurrence of the acts set forth in this Complaint, Joffer filed charges of disability discrimination. Original charges were filed with the Human Relations Commission 5/3/05.

9. On or about September 20, 2006 a "Notice of Right to Sue" was issued to Joffer by the EEOC, Chicago District Office entitling her to institute a civil action in the appropriate Federal District Court within 90 days of the date of receipt of the notice.

## Statement of Facts

10. Joffer was employed by Defendant Premier Bankcard in the Credit Department

from April 1, 1996 to May 3, 2005. Joffer was employed as a Credit Rep, Credit Rep 11, Lead Credit Rep, Unit Administrator and most recently as a Unit Manager. At the time of the allegations, Joffer was responsible for supervising 3 to 20 people.

11. Though Joffer indicated to Human Resources she was NOT quitting her job, she was going on long term disability to take care of her disability. Human Resources sent Joffer a letter indicating that they accepted her resignation.

12. Joffer was a good employee during the years she worked for the Defendant. Her performance reviews were Satisfactory to Very Good throughout her employment. Joffer was also promoted within the department to reach the level as a Unit Manager. A position she held for four and a half years. Joffer was also given a $1,000 bonus for her exceptional work. This bonus is not usually given at the Unit Manager level but Defendant Doetzel felt she deserved it.

13. Joffer was diagnosed with ulcerative colitis in early 1990 which falls under the Americans with Disabilities Act 42 U.S.C. 12101. During Joffer's employment, she was also diagnosed with depression, anxiety, hormonal imbalance and polycystic ovarian syndrome. She was being treated with medication to help control these conditions.

14. Due to the harassment at work from Defendant Doetzel and her medical condition, Joffer was seen in her Physiatrists office 10/19/04 and a letter was written on her behalf that she should remain off work until she see's her Physiciatrist on 11/26/04 and medication adjustments were made. Joffer got FMLA certification from her Gastroenterologist dated 10/25/04 indicating "frequent flares particularly after last pregnancy" (Joffer had a baby 10/10/00) also stated "since mid October this patient (Joffer) has been unable to function due to severe bowel symptoms, particularly in the

Morning hours". It indicated that it was necessary for Joffer to take work intermittently or to work on a less than full schedule as a result of this condition. Time of incapacitation was uncertain. Also indicated that this was a "chronic" condition and is expected to last for some time but the duration is uncertain. Prior to the medical certification listed above, a note from Joffer's Gastroenterologist dated 3/15/04 stated, "Her disease is quite severe and has left her with a colon that has little capacity and causes her to have frequent urgent stools. Her symptoms are much worse in the morning, requiring a number of trips to the bathroom because of these urgent stools despite significant medical management of her ulcerative colitis". Defendants Premier Bankcard, Doetzel and Schmidt were made well aware of her condition.

15. In an e-mail dated 9/17/04 from Defendant Doetzel to Dan Smoot of Human Resources stated "Jen (Joffer) came to see me (Doetzel) on 9/14 to let me know that she has a lot of anxiety about all of this time she's missed recently as a result of her colitis and sinus condition. She also told me that she is being treated for the anxiety as well. The irony is that just last week (Monday Sept 6th) I (Doetzel) stopped by her office to let her know that I (Doetzel) suspected she was coming in on days when she didn't feel well. I (Doetzel) told her by no means should she come in simply because she feels guilty. It was very sincere on my (Doetzel's) part and she (Joffer) seemed relieved to hear me say that". Defendant Schmidt also had conversations with Joffer regarding her tardiness. Schmidt indicated during the school year he is late frequently because he has to drop his kids off at school and indicated to Joffer that her tardiness can't be helped and "not to worry about it". There was also another employee at the same level as Joffer who had repeated tardies, no known medical issues but was not placed on corrective action for

her tardiness. As for absences, there was another supervisor at the same level as Joffer who was repeatedly absent from work, no known medical issues and also was not placed on corrective action. She was eventually moved to a different department. Here are two prime examples that Joffer was singled out and harassed based on her disability by Defendant Doetzel, Defendant Human Resources, Defendant Tom Schmidt and Defendant Premier Bankcard.

16. Defendant Premier Bankcard has written company policies pertaining to Discrimination. According to these policies, Premier promotes the hiring of individuals without regard to race, sexual orientation, marital status, color, religion, national origin, ancestry, age, medical condition, disability or military service status or any other basis prohibited by law.

17. Although Joffer complied fully with the terms of her employment and the FMLA, she was scrutinized, harassed and put on corrective action for tardiness due to her disability.

## Count 1-Disability Discrimination-42 U.S.C 12101

18. Joffer incorporates by reference all of the preceding paragraphs.

19. On 10/15/04 Joffer was put on corrective action due to her tardiness related to her disability.

20. Joffer informed Premier Bankcard Human Resources she was going out on long term disability to take care of her disability. Joffer informed Premier she was not quitting but Premier took it as a resignation and terminated her employment 5/4/05.

21. Defendant failed to accommodate Joffer when she asked to come into work

at 8:30 due to her disability to prevent tardiness. Joffer was not offered another shift to work or another position within Premier Bankcard that would accommodate Joffer's disability. The Americans with Disabilities Act requires employers to provide adequate accommodations for persons with disabilities. Joffer falls into that category.

22. Joffer was harassed repeatedly by Defendant Doetzel on several occasions. Doetzel would walk by her office and not say a word to her. He indicated that she was lacking in her performance and he could not provide examples. Doetzel indicated at the breakfast table where Joffer was sitting that there were many people abusing FMLA. At that time, Joffer was on FMLA due to her disability. In a meeting in Sioux Falls with other supervisors, Doetzel called people on FMLA skanks. Joffer was on FMLA at that time. This repeated harassment by Doetzel made Joffer feel inadequate and her depression and anxiety became worse as well as making her colitis unbearable due to the stress.

## Prayer for Relief

WHEREFORE, Joffer prays for relief as follows:

1. That the court find and enter judgment that the Defendants acts, practices and procedures complained violated Joffer's right to be free of disability discrimination under the ADA;

2. That the court award Joffer loss of the difference in her pay versus disability pay, front pay and reimbursement for lost fringe benefits including health insurance, life insurance, 401K, dental and vision insurance and other appropriate relief to address the discriminatory practices of herein;

3. That the court award Joffer punitive damages;

4. That the court award Joffer her costs, attorney fees, and disbursements; and

5. That the court grant such further and additional relief that it deems appropriate.

**PLANTIFF DEMANDS A HEARING IN FRONT OF A JUDGE ON ALL ISSUES OF FACT.**

Dated this 11th day of December 2006.

By *Jennifer L. Joffer*