UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER L. JOFFER, | ) | CIV. 06-4265-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING IN PART |
| vs. | ) | AND GRANTING IN PART |
| | ) | DEFENDANT'S MOTION FOR |
| PREMIER BANKCARD INC., | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |

Defendant, Premier Bankcard, moves for summary judgment. Plaintiff, Jennifer Joffer, opposes the motion. The motion is denied in part and granted in part.

**FACTUAL BACKGROUND**

Joffer began working for Premier on or about April 11, 1996. She initially worked as a Credit Representative I in the Credit Department. Premier promoted Joffer from Credit Representative I through Credit Representative III and then to Lead Credit Representative. In October 1998, Premier promoted Joffer to Credit Unit Administrator and in August or September 2000, Premier promoted Joffer to Credit Unit Manager. Joffer worked for Premier as a Credit Unit Manger until her employment with Premier ended in 2005. On or about May 2, 2005, Joffer qualified for long-term disability leave status through ING, Premier's disability insurance carrier. The parties dispute the circumstances surrounding the end of Joffer's employment with Premier. Joffer alleges that

she was terminated from her employment when she qualified for long-term disability leave. Premier denies this allegation and asserts that Joffer quit when she qualified for long-term disability insurance.

Joffer was initially diagnosed with ulcerative colitis (colitis) in 1990. In 2001 or 2002, she was diagnosed with and treated for depression. Between January 2004 and May 2005, Joffer's last seventeen months of working at Premier, she experienced adverse symptoms due to her colitis and depression.[1] In relation to her colitis, Joffer experienced frequent bowel movements, severe stomach cramps, and fevers. She also had diarrhea, which caused her to have accidents. She was tired and the pain she experienced due to her colitis impacted her at work. Further, Joffer's colitis affected friendships, "probably" affected her relationship with her son, affected her emotional stability, and affected her ability to sleep. But, during this time period, these symptoms did not prevent her from taking care of herself or from caring for her son. With regards to her depression, Joffer cried for no reason, did not want to do things, would not talk, and got angry or annoyed easily. In July and November 2006, Joffer underwent two surgeries, which removed her colon and large intestine.

---

[1] During this time, Joffer also experienced issues with obesity. But Joffer is not alleging that she is disabled because of her obesity. In fact, Joffer stated that she does not believe her obesity impacted her employment at Premier. Docket 62, at ¶ 64. Accordingly, the court will not address whether Joffer's obesity rendered her disabled within the meaning of the ADA.

As a result, Joffer's ability to control her bowels has improved but is still not completely resolved.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.  Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely

rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

## DISCUSSION

The Americans with Disabilities Act (ADA) prohibits discrimination against a "qualified individual with a disability." 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, Joffer must show "(1) that [she] has a disability within the meaning of the ADA; (2) that [she] is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that [she] suffered an adverse employment action due to a disability." Chalfant v. Titan Distribution, Inc., 475 F.3d 982, 988 (8th Cir. 2007) (internal quotations omitted). For purposes of this summary judgment motion, Premier only argues that there is insufficient evidence to prove the first element, that is, that Joffer does not have a disability within the meaning of the ADA. Defendant's Brief, Docket 58, at 13.

With respect to this first element, "[t]he ADA defines a disability as: '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.' " Webner v. Titan Distribution, Inc., 267 F.3d 828, 833 (8th Cir. 2001) (quoting 42 U.S.C. § 12102(2)). Here, Joffer brings her claim on the basis that she has a physical

or mental impairment that substantially limits one or more of her major life activities. Plaintiff's Brief, Docket 60, at 2-3. More specifically, Joffer argues that her colitis and depression substantially limit her ability to work. Joffer further argues that the ability to control the elimination of waste is a major life activity and that her colitis and depression substantially limit this activity. Finally, Joffer argues that depression alone substantially limits her major life activities of talking, walking, and eating.

I. **Ability to Work**

Premier argues that Joffer's colitis and depression do not substantially limit her in the major life activity of working. First, Premier argues that currently Joffer no longer suffers from colitis because she has undergone two surgeries, which removed her colon and large intestine. Premier argues that her only lingering limitations include staying hydrated, watching her diet, taking vitamins, and avoiding lifting anything heavy. Second, Premier argues that from January 2004 to May 2005, Joffer's allegations that her colitis caused her to be late for work, caused her pain that generally impacted her capacity to work, and generally caused her performance to deteriorate are insufficient to establish that she faced significant barriers to employment.

Joffer responds that her ability to work is substantially limited by her colitis and depression. Joffer argues that she is precluded from performing a broad range of jobs because ING determined that she had an inability to

5

perform all of the essential duties of any gainful occupation.  Joffer also argues that there is an open question about whether she could physically handle employment because she has not been employed since being placed on long-term disability status at Premier.  While she received two job offers, because she ultimately declined one position and was not hired for the other position, Joffer contends that it is not known whether she could have handled the rigors of employment.  Joffer further argues that her colitis affects what she eats, drinks, and lifts and limits her ability to hold waste in her body.  Joffer asserts that her depression causes periods of inactivity and emotional outbursts.

The issue before the court is whether Joffer's colitis and depression substantially limit her ability to work.  When considering Joffer's symptoms, the court must focus on the relevant time period in this case, which is May 2005, when Joffer stopped working at Premier.  See Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1047 (8th Cir. 1999) (stating that the determination of whether an individual is entitled to protection under the ADA should be made at the time of the employment decision).[2]

Federal regulations set forth that a person's ability to engage in major life activities is "substantially limited" when that person is either unable to perform

---

[2] The court notes that the fact that Joffer underwent two surgeries in 2006 and, as a result, her condition improved is relevant to the duration and long-term impact of her impairment, which are factors that are considered when determining whether an individual is disabled.  But the year 2006 and beyond is not relevant when considering whether Joffer's symptoms limit her ability to engage in a major life activity.

the activity, or is significantly restricted as to the manner, condition, or duration of performance of the activity in relation to an average person. 29 C.F.R. § 1630.2(j). Factors relevant to the determination of whether the major life activity is substantially limited by the impairment include: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact of the impairment. Id.

Further, "an individual is substantially limited in the major life activity of working if he or she is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" Kellogg v. Union Pacific R.R. Co., 233 F.3d 1083, 1087 (8th Cir. 2000) (quoting 29 C.F.R. § 1630.2(j)(3)(i)(1999)). Thus, Joffer must show that she is unable to work in a broad class of jobs. See Snow v. Ridgeview Medical Ctr., 128 F.3d 1201, 1207 (8th Cir. 1997). Significantly, "'[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'" Kellogg, 233 F.3d at 1087 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). As such, "working does not mean working at a particular job of the person's choice." Miller v. City of Springfield, 146 F.3d. 612, 615 (8th Cir. 1998).

Here, Joffer has offered evidence in support of her assertion that her colitis and depression substantially limit her ability to work. Joffer testified that her colitis symptoms were the worst from January 2004 until May 2005,

when she stopped working at Premier, with the exception of when she was first diagnosed with colitis. Joffer testified that at that time she had frequent bowel movements which were worse in the morning, she experienced diarrhea when her colitis flared up, and she had accidents in her pants. She also testified that she had severe stomach cramps, experienced fevers, and was tired. Joffer stated that her colitis and the surrounding circumstances caused her work performance to deteriorate because she was absent from work more frequently, she came in late in the morning, she experienced pain and discomfort associated with cramping, and she left work immediately after her shift. Docket 64, Tab 1, at 6, 10, 11. Further, Joffer testified that the symptoms from her depression were worst from October 2004 through the present. She stated that she would cry for no reason, would not want to do things, and would get angry or annoyed easily. She also testified that she would just sit at home and not engage in routine activities, such as reading the newspaper. Id. at 13-14. When considering Joffer's symptoms, it is undisputed that her colitis and depression are interrelated and exacerbate each other.

Moreover, in May 2005, Dr. John Barker, Joffer's gastroenterologist, completed an attending physician's statement of impairment and function, in which he explained Joffer had been diagnosed with colitis along with periodic rectal incontinence and depression. Dr. Barker indicated that Joffer experienced frequent stools with occasional incontinence and that on

March 14, 2005, he advised her to cease working due to this condition.[3] Also, Dr. Barker identified the medications Joffer was taking and stated that he was seeing her every two weeks to a month. Dr. Barker concluded that it would be hard to estimate when Joffer could return to work until her colitis was in remission either from medical or surgical management. Docket 64, Tab 2. Viewing the facts in the light most favorable to the nonmoving party, Joffer, the court finds that the symptoms of colitis and depression described by Joffer and the medical opinions in the record provide sufficient evidence so that the trier of fact could find that Joffer's impairments substantially limited her ability to work.

Premier relies on Hileman v. City of Dallas, Texas, 115 F.3d 352 (5th Cir. 1997), to argue that the fact that Joffer testified that she would still be employed at Premier if Premier would have allowed her to start work at 8:30 a.m. instead of 8 a.m. demonstrates that her colitis symptoms were slight and did not significantly impact her ability to work. But that case is distinguishable from the instant case. In Hileman, the plaintiff, who was suffering from a spastic colon aggravated by multiple sclerosis, resigned from her employment with the City of Dallas. Id. at 352, 353. Further, Dr. Robert

---

[3] But in a May 2, 2005, letter Dr. Barker wrote to ING, he informed ING that despite Joffer's significant bowel symptoms, she continued to attempt to work and was somehow able to continue to work until May 2, 2005. He explained that Joffer called him and told him that she could no longer work because of her condition. Docket 64, Tab 3.

9

Jacobson, a colo-rectal surgeon, who examined the plaintiff during the course of her impairments, opined that her impairment did not limit her ability to work and that he never placed any restrictions or limitations on her activities. Id. at 354. Also, the plaintiff in Hileman secured other employment after she resigned from her employment with the City of Dallas. Id.

Unlike in Hileman, in the instant case, while it is disputed whether Joffer resigned from her job at Premier, it is undisputed that when she left her employment with Premier, she qualified for and received long-term disability benefits. Additionally, unlike in Hileman where the plaintiff's doctor determined that the plaintiff was not limited in her ability to work, in this case, Dr. Barker opined Joffer should not work and could return to work when her colitis was in remission either from medical or surgical management. Finally, unlike the plaintiff in Hileman who secured other employment after her resignation, Joffer has not been employed since her last day at Premier.[4] Accordingly, the court does not find Hileman persuasive in this particular circumstance.

---

[4] The court notes that Joffer has received two job offers since her 2006 surgeries. While these job offers are relevant to the duration and long-term effect of Joffer's impairment, they are not relevant to the determination of whether Joffer's symptoms were disabling. As mentioned above, the relevant time period to determine whether Joffer's symptoms were in fact disabling was the time she left Premier. In May 2005, immediately after her employment with Premier ended, Joffer did not apply and did not receive any offers for employment.

Premier also argues that Joffer cannot assert that she could have continued to work at Premier if she had been allowed to start at 8:30 a.m. and at the same time assert that she was precluded from performing a broad range of jobs.  Premier further argues that Joffer's testimony and her doctor's medical opinions are contradictory and, therefore, summary judgment is appropriate. Just because Joffer testified that she believed that if she would have been given an accommodation at Premier, she would still be employed does not necessarily mean that she could have performed a broad range of jobs. Additionally, the fact that Dr. Barker advised Joffer to stop working because of her condition and Joffer believed she still could work if given an accommodation does not warrant summary judgment.  Rather, it demonstrates that the extent to which Joffer was limited in her ability to work is an unresolved question of fact to be determined by the fact finder.  Also, the only issue before the court presently is whether Joffer is disabled within the meaning of the ADA, not whether she is qualified to perform the essential functions of the job, with or without reasonable accommodation.

Because, as mentioned above, the court finds that Joffer has presented enough evidence through her testimony and Dr. Barker's medical opinions to create a question of fact regarding whether her impairments substantially limit her ability to work, the court denies Premier's summary judgment.

**II.     Ability to Control Elimination of Waste**

Premier argues that Joffer's colitis and depression do not substantially limit her in the major life activity of controlling her body functions.  First, Premier argues that Joffer no longer suffers from colitis because she had two surgeries, which removed her colon and large intestine.  Premier asserts that Joffer's current limitations, which include ensuring hydration, watching her diet, taking vitamins, and avoiding lifting heavy objects, do not substantially limit Joffer in the major life activity of controlling her bodily functions.  Second, Premier argues that from January 2004, to May 2005, Joffer's alleged loss of control over her bodily functions was not so severe as to prevent her from working full time at Premier.  Premier further argues that even when Joffer's employment at Premier ended, Joffer's loss of control over her bodily functions was so slight that the simple accommodation of letting Joffer start at 8:30 a.m. would have allowed her to remain gainfully employed.  Premier also points out that Joffer was able to participate in activities outside of work with no problem.

Joffer responds that her inability to control her bowels causes her to be limited in where she can go, who she is willing to see, and what she is able to do.  Joffer argues that despite surgery which improved but did not resolve her ability to control her bowels, she has not returned to an asymptomatic condition and continues to have limitations on her daily life.  Further, Joffer

asserts that her depression has gotten worse since her surgeries, leading to compulsive eating, which in turn impacts her colitis symptoms.

As explained above, when determining whether Joffer's colitis and depression substantially limit her ability to control the bodily function of eliminating waste, the court must consider Joffer's symptoms during the relevant time period. Here, the relevant time period is May 2005 because that is when Joffer stopped working at Premier. See Browning, 178 F.3d at 1047.

Many courts have recognized that control of body functions, such as bowel movements, constitutes a major life activity. See Workman v. Frito-Lay Inc., 165 F.3d 460, 467 (6th Cir. 1999) (stating that "the jury could have decided that controlling one's bowels is a major life activity"); Banks v. CBOCS West, Inc., 2005 WL 1126913, at *6 (N.D. Ill. May 9, 2005) (stating that "it seems a matter of common sense that if eating constitutes a major life activity, waste processing also qualifies as a major life activity"); and EEOC v. Browning-Ferris, Inc., 262 F. Supp. 2d 577, 584 (D. Md. 2002) (stating that "moving one's bowels and eating are certainly among 'those basic activities that the average person in the general population can perform with little or no difficulty' ").

As discussed above, the federal regulations provide that a person's ability to engage in major life activities is "substantially limited" when that person is either unable to perform the activity, or is significantly restricted as to the

manner, condition, or duration of performance of the activity in relation to an average person. 29 C.F.R. § 1630.2(j). When determining whether the major life activity is substantially limited by the impairment, relevant factors to consider include: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact of the impairment. Id.

Several courts have determined that the "substantial limitation" requirement in relation to bowel movements is satisfied only when the restriction of bowel movements cause severe symptoms. See Maziarka v. Mills Fleet Farm, Inc., 245 F.3d 675, 680 (8th Cir. 2001) (determining that the plaintiff was disabled by his irritable bowel syndrome because he experienced "periods of incapacity [during which he was] prevented from leaving home to go to work, performing manual tasks, or interacting with supervisors, co-workers, and store patrons, and [was] afflicted with substantial pain and intestinal discomfort"); Banks, 2005 WL 1126913, at *6 (finding the plaintiff had sufficiently alleged "a *substantial* limitation on the major life activity of proper waste processing [because] he require[d] excessive trips to the restroom for chronic and painful diarrhea") and Mazza v. Bratton, 108 F. Supp. 2d 167, 170, 174 (E.D.N.Y. 2000) (finding that the plaintiff with ulcerative colitis was substantially limited in his ability to perform the major life activity of eliminating waste because plaintiff alleged, among other things, that he

suffered from severe diarrhea, bloody stool, severe cramps, severe pain in different degrees, mood changes, and sleep deprivation, and the medical records supported these allegations).

Here, Joffer testified that in May 2005, she had frequent bowel movements. She also testified that her colitis caused diarrhea and that many times she could not hold the diarrhea and, as a result, would go to the bathroom in her pants. Docket 64, Tab 1, at 6. Also, Dr. Barker indicated that Joffer had "significant bowel symptom[s]" which included urgent frequent stools with occasional incontinence. Dr. Barker further indicated that Joffer experienced urgency and rectal incontinence aggravated by massive weight gain since her pregnancy, which also caused severe depression.

Premier argues that when compared to other cases, such symptoms are not significant enough to substantially limit Joffer's ability to control her bowel movements. But, "[t]he determination of disability is a highly fact-intensive one." Maziarka, 245 F.3d at 679. Therefore, "a conclusion that a certain condition, or particular manifestation of a condition, does not substantially limit a particular plaintiff does not foreclose a determination that another individual with the same or analogous condition may be disabled within the meaning of the ADA." Id.

Accordingly, based upon Joffer's testimony regarding the symptoms she suffered and her doctor's opinions, a reasonable fact finder could find that Joffer

15

was "[s]ignificantly restricted as to the condition, manner or duration under which [she could move her bowels] as compared to the condition, manner, or duration under which the average person in the general population can perform [this] same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). Viewing the facts in the light most favorable to the nonmoving party, Joffer, the court finds that a fact finder could determine that Joffer has described substantial limitations upon her ability to control elimination of waste during the relevant period and that her doctor's recommendations substantiate her allegations. Accordingly, summary judgment is not proper on this claim.

### III.  Other Significant Life Activities

Joffer also argues that depression alone significantly impacted the major life activities of talking, walking, and eating. Plaintiff's Brief, Docket 60, at 16. But her conclusory assertion in her brief, unsupported by her deposition testimony or her doctor's diagnosis, is insufficient to make a prima facie showing that her ability to talk, walk, and eat was substantially limited in May 2005. The fact that Joffer testified that her depression caused her to sit at home and not talk to people may mean that depression affected her ability to talk, walk, and eat. But this does not necessarily mean that such symptoms substantially limited her ability to engage in these significant life activities. In fact, she testified she still cared for herself and her son as well as completed all the shopping and housecleaning. Docket 64, Tab 1, at 15-16. Completion of such activities cannot be completed if an individual is substantially limited in her

16

ability to talk, walk, and eat. Accordingly, even when the facts are viewed in the light most favorable to the nonmoving party, Joffer, the court finds that summary judgment is proper on Joffer's claim that her depression substantially limits her ability to talk, walk, and eat.

Based on the foregoing discussion, it is hereby

ORDERED that defendant's motion for summary judgment (Docket 57) is denied in part and granted in part.

IT IS FURTHER ORDERED that the court's scheduling order shall be amended as follows:

1. All discovery shall be completed by **October 1, 2008**.

2. All motions, other than motions in limine, shall be filed and served by **November 3, 2008.**

All other provisions of the court's scheduling order shall remain in effect.

Dated June 6, 2008.

                BY THE COURT:

                /s/ *Karen E. Schreier*
                KAREN E. SCHREIER
                CHIEF JUDGE